IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **Manus Dorsey** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Case No.: 8:16-cv-01959-GLS** |
| ) | |
| **Converse, Inc., et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION

Pending before this Court, by the parties' consent, are Motions for Summary Judgment and Responses in Opposition thereto. (ECF Nos. 103, 106, 107, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124). For the reasons set forth below, Defendant Converse, Inc. ("Converse")'s Motion for Summary Judgment is GRANTED, Third Party Defendant Tyco Integrated Security, LLC ("Tyco")'s Motion for Summary Judgment is GRANTED, and Defendant Sachse Construction, LLC ("Sachse")'s Motion for Summary Judgment is GRANTED.

### I.        Factual Background

On or about November 16, 2013, Plaintiff Manus Dorsey ("Plaintiff") was a computer technician employed by Tyco, who was working on the premises of a Converse retail store. (ECF No. 35 at 3, ¶ 10; ECF No. 103 at 1; ECF No. 106 at 5). Plaintiff climbed a ladder to work in a wall-mounted cabinet fixture (the "subject cabinet"). (ECF No. 35 at 3–4, ¶¶ 10–11; ECF No. 103 at 1; ECF No. 106 at 5). The subject cabinet fell from the wall, striking Plaintiff, causing him to fall off of the ladder and sustain injuries. (ECF No. 35 at 4, ¶ 11; ECF No. 103 at 1; ECF No. 106 at 5).

According to Converse, Converse was constructing a new "Factory Outlet" store prior to the date of Plaintiff's fall. (ECF No. 106 at 5). Converse contracted with Tyco to install a security system in the store. *Id.* Plaintiff arrived that day at the direction of Tyco, and planned to "complete the installation and programming of the security system and video surveillance system." *Id.* It is undisputed by all parties that Plaintiff was not aware of the allegedly defective condition of the equipment cabinet prior to the subject accident. *Id.* at 5–6, Ex. B at Answer 8 (Plaintiff's answers to Converse's interrogatories).

The subject cabinet and the support for the cabinet were installed by Converse's contractors and a subcontractor. (ECF No. 103 at 2). Defendant Sachse was under contract with Converse to undertake tenant improvements from November 8, 2013 through November 13, 2013. *Id.* As part of these improvements, Sachse "affixed a plywood board to the wall of an office area" that was "intended to hold a cabinet that would house electronic cables and equipment." *Id.* Subsequently, Orion Communications, Inc. ("Orion"), a subcontractor for Converse under contractor Electro Standards Laboratories, Inc. ("ESL"), installed the subject cabinet over three days on November 7, 2013, November 8, 2013, and November 11, 2013. (ECF No. 120-1 at 3) (Orion's answers to Plaintiff's interrogatories).

**All** parties to this matter have adopted **Plaintiff's** expert report, which was written by Beacon Scientific's George Saunders and Dr. Jason Kiddy. (emphasis supplied). The report represents that the cabinet fell from the wall, but the support for the cabinet did not fall. (ECF No. 120-1 at 3; ECF No. 103 at 2; ECF No. 106 at 6; ECF No. 118-4). The expert report further states that "[t]he photographs . . . clearly show the rear wall-mounted section of the equipment

cabinet remaining in place throughout the event." (ECF No. 118-4 at 11). The report contains

the following six final conclusions:

(1) the cabinet "did not have a structural failure that would have led to the center section and door of the cabinet coming apart from the rear section and falling from the wall";

(2) "the quick-release, retractable hinge pins were in the retracted/unlocked position immediately after the accident";

(3) "[w]ith the rear-to-center section hinges in the unlocked position, the center and front door sections of [the cabinet] can rest on the rear wall section of the cabinet such that its weight is supported. This is, however, an improper installation of the cabinet and would pose a hazardous condition to anyone working with or in the vicinity of the cabinet. The improper/negligent installation was performed by the defendants in this matter";

(4) "[t]he pin to the self-latching closure mechanism was installed or assembled incorrectly providing less resistance to the center section coming away from the rear section/wall";

(5) "the installer of [the cabinet] should be clearly aware of the requirement to lock the hinge pins in position and is provided with clear information on the proper level position to do such";

(6) "[t]he failure to properly install [the cabinet] by the defendants in this matter was the cause of the subject accident and plaintiff's injuries and damages."

*Id.* at 14–15.

## II.     Procedural History

Plaintiff filed his Second Amended Complaint on November 4, 2016 against Defendants

Converse, Orion, ESL, and Sachse. (ECF No. 35). In it, Plaintiff alleges that Orion, ESL, and

Sachse were negligent in their installation of the subject cabinet and failed to warn Plaintiff of

the dangerous condition of the subject cabinet. *Id.* at 4–6. Plaintiff also avers that Converse was

directly negligent because it "knew or should have known that the subject wall-mount cabinet

fixture was improperly installed" and failed to inspect the premises for any dangerous conditions,

to repair or rid the premises of the same, and to warn Plaintiff of all dangerous, hazardous, and unsafe conditions. *Id.* at 7–8.  In addition, Plaintiff asserts that Converse is vicariously liable for the other Defendants' installation of the wall-mount cabinet because Converse was in control of the work performed by the other Defendants. *Id.* at 6–7.

On December 14, 2016, Converse filed a Third Party Complaint against Tyco, alleging that if Converse is liable to Plaintiff for his injuries, Tyco has a duty to:  (1) indemnify Converse under Tyco and Converse's contract; (2) pay damages for breaching the contract's liability insurance procurement provision; and (3) pay Converse for contribution to the extent Converse is not entitled to indemnity.  (ECF No. 46).  Defendants Converse, Orion, ESL, and Sachse also filed crossclaims against one another, alleging that the others were either wholly or contributorily liable for Plaintiff's injuries.  (ECF Nos. 38, 48, 57, 70).

While discovery was still ongoing, Sachse, Converse, and Tyco filed Motions for Summary Judgment[1].  (ECF Nos. 103, 106, 107).  This matter was referred to me for All Further Proceedings.  (ECF No. 108).  The parties have fully briefed the Motions for Summary Judgment and they are ripe for disposition.  (ECF Nos. 115–124).  Pursuant to Local Rule 105.6, the Court deems that no hearing is necessary.

### III.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that parties to a summary judgment action who are "asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

---

[1] The Scheduling Order (ECF No. 92) reveals that discovery ended on May 30, 2018.

those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

After a moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverly*, 404 F.3d 243, 246–47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW*, 187 F.3d 415, 422 (4th Cir. 1999)). The burden can be satisfied through the submission of discovery materials. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 495, 520 (1991) (citing *Anderson*, 477 U.S. at 255)). A mere scintilla of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59.

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Dewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50.

## IV. Analysis

To establish a cause of action for negligence in Maryland, a plaintiff must prove four elements: (1) defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual loss or injury; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *See Wankel v. A&B Contractors, Inc.*, 127 Md. App. 128, 157 (1999).

### a. Converse's Motion for Summary Judgment

#### 1. Legal Standards for Negligence/Vicarious Liability

Plaintiff brings this action against Converse under theories of both negligence and vicarious liability. Generally, an employer of an independent contractor is not liable for the negligence of the independent contractor or the independent contractor's employees. *See Rowley v. Balt.*, 305 Md. 456, 461 (1986). Exceptions to this general rule are numerous, but generally

fall into one of three categories: (1) negligence of the employer in selecting, instructing, or supervising the independent contractor; (2) non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff; and (3) work which is specially, peculiarly, or "inherently" dangerous. *Appiah v. Hall*, 416 Md. 533 (2010) (citing to *Rowley*, 305 Md. at 462). Under these exceptions, liability is imposed on the employer who hires the independent contractor under one of two theories: vicarious liability or "actual fault" of that employer. *Id.*

Under a theory of vicarious liability, employers of independent contractors must adhere to a "safe workplace" doctrine when said employers own or have control over the property on which the work is to be completed. This doctrine is a non-delegable duty under which "one who employs an independent contractor has a duty to provide a safe workplace for the employees of the contractor." *Id.* at 463; 498. This theory of liability, however, "rests on the assumption that the harm in question was caused by a condition on the property," not because of the work that the independent contractor is doing. *Appiah*, 416 Md. at 553.

A possessor of land is subject to liability for physical harm caused to invitees if, but only if, he: (a) knows, or by the exercise of reasonable care, would discover the unsafe condition, and should realize that it involves an unreasonable risk of harm to such invitees; and (b) should expect that the invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger. *Id.* at 553 (quoting Restatement of Torts, § 343). In other words, the duty imposed upon employers is to "use reasonable and ordinary care to keep [their] premises safe for the invitee[s] and to protect

[them] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety will not discover." *Rowley*, 305 Md. at 465.

Alternatively, employers of independent contractors can be liable under a theory of "actual fault" when they have "retained control of the details of the work." *Appiah*, 416 Md. at 554. General control, however, is insufficient to establish liability. There must be such retention of a right of supervision that the contractor is not entirely free to do the work in his own way. *Id.* The control must be more than, for instance, the following scenarios: (1) a general right to order the work stopped or resumed; (2) to inspect its progress or to receive reports; (3) to make suggestions or recommendations which need not necessarily be followed; or (4) to prescribe alterations and deviations." *Id.* (quoting Restatement of Torts, §414).

### 2. Converse's Arguments

In the instant case, Converse was the employer of independent contractor ESL and its subcontractor, Orion. Converse makes the following arguments regarding its role in the subject accident: (1) "Converse did not install or perform any work or maintenance on the wall-mount cabinet before Plaintiff's injury" and (2) "[t]he record clearly establishes that Converse had no actual notice of any defective condition and Plaintiff's only evidence establishes that Converse **could not** have known about any defect in the wall-mount cabinet." (ECF No. 106 at 9) (emphasis in original).

With regard to control over the installation of the cabinet, Converse contends that "[h]aving hired reputable and competent independent contractors to perform this work, Converse played no role in the installation of the subject wall-mount cabinet." *Id.* Converse's affiant and Store Construction Manager, Sam Waterman, states also that Converse "did not direct, observe,

or supervise the personnel who did assemble or install the subject wall cabinet." (ECF No. 106-1 at 1).

Converse further asserts that it did not create any hazardous or defective condition, so Plaintiff is limited to arguing that Converse knew or should have known about the defective or hazardous wall-mount cabinet. (ECF No. 106 at 9). With regard to notice, Converse avers that there was no way for it to know about the defective condition, as Plaintiff's experts "confirmed that the cabinet would appear to be stable and it would support its own weight until dislodged." *Id.* at 10. Converse asserts that it did not have a duty to "go behind its hired contractors to inspect their work because no such duty exists." *Id.*

Plaintiff, in opposition[2], does not dispute Converse's statements, but instead asserts that "discovery in this matter is ongoing and thus the Defendant's Motion is premature and should be, accordingly, denied." (ECF No. 116 at 3). Plaintiff argues that "[t]he appropriate ruling when a summary judgment motion is premature is to deny the motion until the nonmoving party has had the opportunity to make full discovery." Further, Plaintiff explains that "it is imperative that Plaintiff be afforded the opportunity to explore through [ESL], the validity" of Converse's contention regarding its relationship with its independent contractors. *Id.* at 4. Plaintiff specifically notes that he has not received written discovery from ESL nor had the opportunity to depose Orion's witnesses. *Id.* at 4–5.

---

[2] The Court notes that ESL also filed an Opposition to Converse's Motion for Summary Judgment. (ECF No. 120). ESL had an opportunity to file its own Motion for Summary Judgment, but instead propounds its arguments in a response that is not responsive to the issues of whether: (1) Converse is liable under a premises liability theory or (2) Converse's direction of the contractors it employed was so detailed as to warrant a finding that Converse is directly negligent. It is questionable whether ESL has standing to file an Opposition at all. *See, e.g.*, *Jarrett v. Green*, 320 F. Supp. 1132, 1134 (N.D. Ga. 1970) (doubting whether a co-defendant can object to a motion for summary judgment made by another co-defendant). Nevertheless, the Court has considered ESL's Opposition and the facts therein, and, as set forth herein, the Court will still grant Converse's Motion for Summary Judgment.

In its Reply to Plaintiff's Opposition, Converse states that "Plaintiff has had ample opportunity to conduct discovery, and as of the filing of this reply, [ESL] and Orion have served executed discovery responses on Plaintiff. There is no evidence in any of the record that Converse could be held vicariously liable for the actions or inactions of [ESL] and/or Orion." (ECF No. 122 at 1–2). Converse argues, by example, that Plaintiff requested 120 days to finish discovery in January 2018, yet did not take a single deposition in the following four months. *Id.* at 5. Converse attached a copy of Converse's Answers to Plaintiff's Interrogatories to its Reply. (ECF No. 122-4). In the Answers, Converse represents that it "hires quality installers with reputable companies that follow their own policies relative to the processes of installing communication equipment and wiring." *Id.* at 8.

### 3. The Court's Findings

Plaintiff argues that he has not had sufficient time for discovery. The Court notes that this case has been ongoing since 2016, so even without the procedural deficiency in Plaintiff's request, the Court is skeptical about Plaintiff's claim that he has not had enough time for discovery. Had Plaintiff set forth specific reasons in an affidavit or declaration per FRCP 56(d), however, the Court may have had a better understanding of Plaintiff's discovery delays.

Although Plaintiff properly cites to Federal Rule of Civil Procedure 56(d) in his Opposition, Plaintiff fails to meet the requirement of the rule to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Plaintiff cited to *Webster v. Rumsfeld*, 156 Fed. App'x 571 (4th Cir. 2005) in support of his contention that, "a Motion for Summary Judgment is inappropriate and should be denied if discovery has not concluded." (ECF No. 116 at 3). Even in *Webster*, however, the

plaintiff filed an affidavit stating the specific reasons why he needed additional discovery. *See Webster*, 156 Fed. App'x at 580. In addition, the Fourth Circuit has repeatedly held that a party may not simply assert in its brief that discovery was necessary without complying with the requirement for a Rule 56 affidavit. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (citing to *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (stating that "a failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.")). The Court rejects Plaintiff's assertion that the Court must deny or delay ruling on Converse's Motion for Summary Judgment because of Plaintiff's failure to abide by the dictates of Federal Rule of Civil Procedure 56(d).

Under Maryland premises liability law, Converse's duty to Plaintiff was to "use reasonable and ordinary care to keep [its] premises safe for the invitee[s] and to protect [Plaintiff] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety will not discover." *Rowley*, 305 Md. at 465. Converse has asserted that it could not have known of the danger posed by the defective wall-mount cabinet. (ECF No. 106 at 9). Plaintiff's expert report supports Converse's contention in that the report states, in part, that the quick-release hinge pins that were improperly positioned at the time of the accident were "located on the inside of the enclosure." (ECF No. 106-4 at 7). The experts opined in the report that "we expect that the cabinet will remain seated in this position, albeit precariously, until it is dislodged." *Id.* at 13. Plaintiff, in response, has not set forth any facts alleging that Converse had a duty to inspect the interior of the cabinet, where the hinge pins were located.

Construing the evidence in the light most favorable to the non-moving party, the expert report establishes that the defective portion of the cabinet was inside of the cabinet and not

readily discoverable by the owner of the premises unless the owner took the additional step of opening the cabinet and inspecting it. There is no evidence in the record that supports the argument that Converse had an additional duty to inspect the subject cabinet after it was installed by Orion (a subcontractor under ESL, who was an independent contractor employed by Converse). Nor is there evidence in the record that Converse did actually look inside of the subject cabinet. To rebut Plaintiff's contention that Converse had such a duty to inspect and therefore should have known about the hinge pins, Converse attached discovery responses that stated that the independent contractors used their own policies. (ECF No. 122-4 at 8). Again, Plaintiff has not presented any evidence that demonstrates that Converse had an additional duty to inspect the cabinet or that Converse actually inspected the interior of the subject cabinet.

Furthermore, Converse and its contractors have set forth undisputed facts that ESL and Orion acted independently from Converse. Plaintiff has not set forth any facts to dispute Converse's claim that it had no role in the installation and did not oversee ESL and Orion so carefully as to notice the interior of the completed cabinet.

As to actual fault, Plaintiff has not provided any evidence to support a finding that Converse was involved in the details of its independent contractors' work. Converse contends that it left its independent contractors to finish the requested tasks without additional instruction from Converse. (ECF No. 106 at 9). Notably, Converse does not even assert that it reserved a right to inspect or direct the work, which is a lower threshold of control that would not confer liability onto Converse. *Id.*; *see also Appiah*, 416 Md. at 563–64. Plaintiff has not presented evidence establishing the requisite amount of control for liability, that "the contractor is not entirely free to do the work in his own way." *Appiah*, 416 Md. at 554 (quoting the Restatement

*Dorsey v. Converse, Inc. et al.*
GLS-16-01959
September 27, 2018
Page 13

of Torts, § 414). Converse's statement that the independent contractors and their subcontractors worked under their own policies is unrebutted by Plaintiff. *See* ECF No. 122-4 at 8.

Plaintiff has not presented any evidence that Converse breached its duty as the employer of independent contractors under either a vicarious liability theory or an actual fault theory. A reasonable jury could not find in Plaintiff's favor as to Converse's liability. Accordingly, there are no genuine issues of material fact regarding Converse's alleged liability. As a matter of law, construing the facts in favor of the non-moving party, Defendant Converse's Motion for Summary Judgment must be granted.

### b. Tyco's Motion for Summary Judgment

In its Motion for Summary Judgment, Tyco asserts that "[i]f the Court grants Converse's Motion, there is no basis for Converse's Third Party claim against Tyco and Tyco would be entitled to summary judgment as well." (ECF No. 107 at 2; ECF No. 124 at 2). Plaintiff's Opposition to Tyco's Motion for Summary Judgment concedes the same. (ECF No. 103 at 2, ¶ 6) ("Plaintiff agrees that Tyco would be entitled to Summary Judgment if this Honorable Court grants Defendant Converse's Motion for Summary Judgment").

The Court finds that the Third Party Complaint against Tyco is predicated on a finding of liability as to Converse. (ECF No. 46) (alleging indemnity, breach of contract for failure to procure insurance as agreed to under contract, and contribution as to Tyco); *see also Wankel*, 127 Md. App. at 171 (stating "a third-party complaint is 'by its nature . . . a contingent claim'") (internal citation omitted).

*Wankel* is instructive for this case. In *Wankel*, appellant Wankel and her fiancé were awakened one night by an explosion caused by a natural gas leak. *See Wankel*, 127 Md. at 133.

Wankel and her fiancé were forced to jump out of the bedroom window, which injured both of them. *Id.* Appellant Gouzoulis, who lived next door to Wankel, was also injured in the fire, and the two women sued, among others, the general contractor of the Wankel Home, D.R. Horton, Inc. ("Horton"). *Id.* Horton filed cross-claims against all of the Co-Defendants on the theories of indemnity and contribution. *Id.* On appeal, the court affirmed the entry of summary judgment in favor of Horton, and thus found that Horton's cross-claims against the Co-Defendants could be properly dismissed. *Id.* at 171. Here, Converse filed a cross-claim for contribution and indemnity against Tyco.

The Court has granted Converse's Motion for Summary Judgment; therefore, Tyco's Motion for Summary Judgment is also granted, as a matter of law.

### c. Sachse's Motion for Summary Judgment

### 1. Parties' Arguments

Sachse moved for summary judgment on the grounds that "Sachse's sole action remotely related to the wall mounted cabinet was to affix a piece of plywood to the wall" and "the plywood was not involved at all in the cause of the incident." (ECF No. 103 at 3). Both the photograph taken after the incident and Plaintiff's expert's report, Sachse avers, support the fact that the plywood was not involved in the cause of the incident. *Id.* Sachse contends that it is undisputed that the plywood board it mounted did not fall or cause anything to fall. *Id.*

In support of its pleading, Sachse provided the sworn affidavit of Jeff Katkowsky, the Vice President of Sachse Construction (ECF No. 103-2). In the affidavit, Mr. Katkowsky states that Sachse "affixed a plywood board to the wall of an office area" as part of its responsibilities under the contract with Converse. *Id.* at 1. Mr. Katkowsky states that Sachse's contract "did not

require it to install the cabinet and Sachse Construction did not install the cabinet. Sachse did not recommend, select, specify, or purchase the cabinet." *Id.* at 2. Further, Mr. Katkowsky asserts that Sachse "played no role" in either: (1) the installation of the cabinet or (2) the installation of the electronics into the cabinet. *Id.* Nor did Sachse, according to Mr. Katkowsky, "direct, observe or supervise the personnel" who handled either of the installations. Sachse avers that on November 13, 2013, it "made the space available to Converse to occupy and stock" and the subject accident did not occur until November 16, 2013, "while Converse was in control of its store." *Id.*

Plaintiff disputes Sachse's claim that it had no additional role besides affixing the plywood to the wall in mounting the subject cabinet. (ECF No. 118 at 4). The only evidence provided by Plaintiffs is an email that reflected that Jeff Middleton, a project superintendent with Sachse, "stated that as part of his duties he was to monitor the construction site and report any problems that arise." *Id.*; *see also* ECF No. 118-1 (email from Middleton to Britton). Due to the content of this email, Plaintiff contends, Sachse must have "had a duty to monitor the construction site, which presumably would include the installation of the subject equipment cabinet, as well as the subsequent inspections of the subject cabinet prior to this accident." (ECF No. 118 at 4). Plaintiff then represents that he needs more time to conduct discovery and look into Mr. Middleton's duties at the time of the accident in order to establish Sachse's additional role. *Id.* at 4–5. Plaintiff relies on the language of Federal Rule of Civil Procedure 56(d) to support his contention that "a Motion for Summary Judgment is inappropriate and should be denied if discovery has not concluded." *Id.* at 3.

In response, Sachse explains that the email at issue "does nothing more than ask for any reports or photographs about the accident so that Sachse could have a record of something that had occurred at a jobsite where Sachse had worked." (ECF No. 121 at 2). Further, Sachse contends, had Sachse had a larger role in the mounting of the subject cabinet, the other Defendants would have asserted cross claims to that effect. *Id.*

### 2. The Court's Findings

To survive summary judgment, Plaintiff must introduce specific factual evidence to support his claim and cannot rely on mere speculation. *Frostbutter v. Bob Evans Farms, Inc.*, 2013 WL 4026985, at *7 (D. Md. Aug. 6, 2013). The evidence must amount to a "probability, not just a possibility" that the defendant's negligence caused the plaintiff's injuries. *Miskin v. Baxter Healthcare Corp.*¸107 F. Supp. 2d 669, 671–72 (D. Md. 1999), *aff'd*, 213 F.3d 632 (4th Cir. 2000).

As of today, the May 30, 2018 deadline for discovery has long passed and Plaintiff never presented additional evidence supporting his claim that Sachse had a larger role than affixing the plywood to the wall[3]. The Court finds that Plaintiff has not provided enough evidence to support his assertions in order to establish a material dispute of fact. Even if the Court were to construe the facts in the light most favorable to the Plaintiff, Plaintiff's proffered email communication does not rise above "a mere scintilla" of evidence to create a material dispute of fact. A rational trier of fact could not, taking the record as a whole, find for Plaintiff based on the email communication alone. *See Scott*, 550 at 380.

---

[3] For example, the Local Rules state that parties are permitted to file for leave to file a surreply. L.R. 105.2(a). Plaintiff never asked for leave to do so.

Plaintiff, in his Opposition, concedes that he is "unable to adequately and completely respond" and identifies additional evidence not in the record that would meet Plaintiff's burden, such as evidence regarding "the nature and extent of all individuals and entities' involvement with the installation and subsequent management/inspection of the subject equipment cabinet up to the time of the accident involving Plaintiff." (ECF No. 118 at 5). But none of this evidence is in the record as is required for a summary judgment motion. *See Pension*, 404 F.3d 243, 246–47 (4th Cir. 2005). Furthermore, as mentioned above, the Court rejects Plaintiff's reliance on Federal Rule of Civil Procedure 56(d) to delay ruling on Sachse's Motion for Summary Judgment until the completion of additional discovery because Plaintiff has failed to include an affidavit or declaration as required by the Rules. *See* Fed. R. Civ. P. 56(d) (stating that when facts are unavailable to the nonmovant, a nonmovant shall show "by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition").

Plaintiff has failed to set forth evidence in the record to suggest that the issue of whether Sachse was negligent in affixing the plywood—or had an additional responsibility—is in dispute and must be resolved at trial. Because Plaintiff has failed to present evidence, summary judgment shall be granted.

## V.     Conclusion

For the foregoing reasons, Defendants Converse, Tyco, and Sachse's Motions for Summary Judgment are **GRANTED**. (ECF Nos. 103, 106, 107).

Dated:  September 27, 2018                            _____/s/_____
                                                     The Honorable Gina L. Simms
                                                     United States Magistrate Judge